UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| WALTER K.,[1] ) | |
| ) | |
|       *Plaintiff*, ) | |
| ) | |
|       *v.* ) | No. 1:20-cv-02804-MG-RLY |
| ) | |
| KILOLO KIJAKAZI,[2] Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
|       *Defendant.* ) | |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

     In May 2018, Plaintiff Walter K. applied for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"), alleging a disability onset date of October 2, 2016. [Filing No. 13-5 at 2, 7.] His applications were initially denied on October 15, 2018, and upon reconsideration on January 9, 2019. [Filing No. 13-4 at 4-12, 23-29.] The Administrative Law Judge (the "ALJ") conducted a hearing on December 20, 2019. [Filing No. 13-2 at 39-70.] The ALJ issued a decision on January 31, 2020, concluding that Walter K. was not entitled to receive benefits. [Filing No. 13-2 at 12-33.] The Appeals Council denied review on September 2, 2020. [Filing No. 13-2 at 2-5.] On October 29, 2020, Walter K. timely filed this civil action asking the

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] Pursuant to Fed. R. Civ. P. 25(d), after the removal of Andrew M. Saul from his office as Commissioner of the SSA on July 9, 2021, Kilolo Kijakazi automatically became the Defendant in this case when he was named Acting Commissioner.

Court to review the denial of benefits according to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). [Filing No. 1.]

The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. [Filing No. 11.] For the reasons set forth below, this Court **REVERSES** the ALJ's decision denying Walter K. benefits.

## I.
### STANDARD OF REVIEW

"The [SSA] provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, __U.S.__, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Id.* In reviewing the ALJ's decision, the Court must uphold the ALJ's finding of fact if the findings are supported by substantial evidence. *Stephens*, 888 F.3d at 327. For purposes of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*,

758 F.3d 834, 837 (7th Cir. 2014)). Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" Zoch, 981 F.3d at 601 (quoting Summers v. Berryhill, 864 F.3d 523, 528 (7th Cir. 2017)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. Stephens, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform his past work; and (5) whether the claimant is capable of performing work in the national economy.

Clifford v. Apfel, 227 F.3d 863, 868 (7th Cir. 2000), as amended (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, he will automatically be found disabled. If a claimant satisfies Steps One and Two, but not Three, then he must satisfy Step Four. Once step Four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." Knight v. Chater, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." Villano v. Astrue, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." Id. The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. See 20 C.F.R. § 404.1520(a)(4)(iv), (v). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. See Clifford, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

Reversal also is warranted "if the ALJ committed an error of law or if the ALJ based the decision on serious factual mistakes or omissions," regardless of whether the decision is otherwise supported by substantial evidence. *Beardsley,* 758 F.3d at 837 (citations omitted). An ALJ commits an error of law if his decision "fails to comply with the Commissioner's regulations and rulings." *Brown v. Barnhart*, 298 F. Supp. 2d 773, 779 (E.D. Wis. 2004) (citing *Prince v. Sullivan*, 933 F.2d 598, 602 (7th Cir. 1991)). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id*. (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)). Reversal is not required, however, if the error is harmless. *See, e.g., Farrell v. Astrue*, 692 F.3d 767, 773 (7th Cir. 2012); *see also Keys v. Barnhart*, 347 F.3d 990, 994–95 (7th Cir. 2003) (citations omitted).

## II.
### BACKGROUND

Walter K. was 29 years old on October 2, 2016, the date of his alleged onset of disability. [Filing No. 13-3 at 2.] He has at least a high school education, completed some technical schooling and is a certified electrician. [Filing No. 13-2 at 50; Filing No. 13-6 at 4.] Walter K. had no prior relevant work experience. [Filing No. 13-2 at 53.] Walter K. alleges he can no longer work due to

degenerative disc disease, spinal stenosis, herniated disk, diabetes, peripheral neuropathy, depression, high blood pressure and panic disorder.[3] [Filing No. 13-6 at 3.]

The ALJ then followed the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520(a)(4) and concluded that Walter K. was not disabled. [Filing No. 13-2 at 33.] Specifically, the ALJ found as follows:

- At Step One, Walter K. had not engaged in substantial gainful activity[4] during the period at issue. [Filing No. 13-2 at 17.]

- At Step Two Walter K. "has the following severe impairments: Diabetes, Peripheral Neuropathy, Degenerative Disc Disease of the lumbar spine, Depression, Anxiety, and Obesity (20 CFR 404.1520(c) and 416.920(c))." [Filing No. 13-2 at 17.]

- At Step Three, Walter K. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR 404.1520(d), 404.1525, and 404.1526. [Filing No. 13-2 at 18.] As to the "paragraph B" criteria for Listings 12.04 and 12.06, the ALJ found Walter K. had "moderate" limitation in concentrating, persisting, or maintaining pace. [Filing No. 13-2 at 20.] The ALJ further found "mild" limitations in two areas: understanding, remembering, or applying information; and interacting with others. [Filing No. 13-2 at 20.] The ALJ found Walter K. did not have a limitation in adapting or managing oneself. [Filing No. 13-2 at 20.]

- After Step Three but before Step Four, Walter K. had the RFC to perform "light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can only occasionally climb ramps and stairs, never climb ladders, ropes and scaffolds, and occasionally balance, stoop, kneel, crouch and crawl. He can perform only jobs that can be learned in 30 days or less, can make only simple work related decisions, and can tolerate only occasional contact with co-workers, supervisors and the general public. [Filing No. 13-2 at 21.]

- At Step Four, the ALJ determined Walter K. had no past relevant work. [Filing No. 13-2 at 32.]

---

[3] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized).  20 C.F.R. § 404.1572(a).

- At Step Five, relying on the testimony of the vocational expert ("VE") and considering Walter K.'s RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Walter K. can perform. [Filing No. 13-2 at 32.]

- The ALJ concluded Walter K. had not been under a disability from October 2, 2018, through the date of the decision. [Filing No. 13-2 at 33.]

## III.
### DISCUSSION

Walter K. argues the ALJ erred by: (1) drawing improper conclusions on his conditions from failures to follow treatment plans without exploring explanations for such deficiencies; (2) failing to properly analyze Dr. Joseph Niezer, M.D.'s opinions and incorporate them into the RFC analysis; and (3) failing to include qualitative interactive limitations in the RFC. [Filing No. 16 at 5.]

### A. Credibility Analysis

First, Walter K. contends that while infrequent treatment or failure to follow a treatment plan can support adverse credibility findings, the ALJ failed to explore Walter K.'s explanations as to his lack of medical care. [Filing No. 16 at 11.] He argues that the ALJ did not properly take into consideration, or ask at the hearing, whether out of network costs, availability of his phone and other applications, limited insurance options, or psychiatric limitations played a role in his failure to follow treatment. [Filing No. 16 at 11-13.]

The Commissioner contends Walter K.'s argument is misplaced for several reasons. First, the Commissioner argues the ALJ was merely reciting a chronological summary of Walter K.'s treatment history and did not draw a negative inference in this recitation. [Filing No. 17 at 8.] Next, the Commissioner argues the ALJ properly considered Walter K.'s proffered reasons, noting lack of treatment and discontinuing taking medication due to depression, lack of access to his phone, duties driving his family members around, improved weight, psychiatric issues, and side effects of

other medications. [Filing No. 17 at 9-10.] Lastly, the Commissioner agues that even if the ALJ had drawn negative inferences, the ALJ could properly consider Walter K.'s treatment course and its effectiveness in evaluating his subjective statements. [Filing No. 17 at 10.]

An ALJ's subjective symptom analysis is given special deference so long as the ALJ explains his or her reasoning and it is supported by the record. *Summers*, 864 F.3d at 528. A reviewing court will only overturn an ALJ's subjective symptom analysis if it is "patently wrong." *Id.*

The Seventh Circuit has explained that "[i]t is true that 'infrequent treatment or failure to follow a treatment plan can support an adverse credibility finding where the claimant does not have a good reason for the failure or infrequency of treatment.'" *Beardsley*, 758 F.3d at 840 (quoting *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008). "But the ALJ may not draw any inferences 'about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations ....'" *Id.* (quoting *Craft*, 539 F. 3d at 679). Doing so may require the ALJ to "question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner." *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) (citing SSR 96-7p, 1996 WL 374186, at *7). The Court notes that *Craft* and *Shauger* were applying the since rescinded SSR 96-7p. However, SSR 16-3 includes substantially the same relevant guidance:

> In contrast, if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints.

2017 WL 5180304, at *9.

The Seventh Circuit has also "repeatedly held that although an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009); *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012)). "The ALJ must confront the evidence that does not support her conclusion and explain why that evidence was rejected." *Moore*, 743 F.3d at 1123 (citing *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)).

Here, after reciting a lengthy medical history, the ALJ found that:

> Regarding his diabetes, the record indicates somewhat poor compliance on the part of the claimant. On several occasions in the medical record he admitted not following a diabetic diet. Additionally, the claimant testified that he does not regularly check his blood sugars. He said he has prescriptions for Lantus and Humalog, but does not take them consistently. His insulin is supposed to be on a sliding scale, and because he does not check his blood sugars, he does not take his insulin on a regular and consistent basis. Even if the claimant's peripheral neuropathy is caused by his diabetes, he raised relatively few complaints throughout the record. It is cited amongst the claimant's diagnoses, but he denied neuropathy when treating with his endocrinologist for diabetes mellitus. (*See* Exhibit 10F/30, 96) One treatment record mentioned a numb/burning sensation in the right lower extremity with walking, but there is no indication that the claimant would be incapable of light work with additional postural and environmental limitations as set forth in the residual functional capacity.
>
> Additionally, the treatment provided to the claimant for his conditions was routine and conservative. Although prescribed gabapentin, the claimant does not take any other pain medication, nor any of the strong narcotic pain relievers often prescribed for intense and disabling pain. There is no indication that the claimant has participated in physical therapy, although it was prescribed on multiple occasions. He has not undergone injections or sought treatment from a pain clinic. The record makes reference to previous injections that he found ineffective, and to a previous surgery referral. However, the claimant has not ceased tobacco use despite knowing that it prevents him from treating surgically. He was also offered nerve root injection upon completing physical therapy, but did not proceed. The claimant also stopped attending counseling after two sessions, despite being advised that it would

> be the most beneficial modality for long term management of his anger/irritability issues. The claimant's failure to pursue all available treatment options further suggests the claimant's symptoms were not as troublesome as alleged, and contrasts with the current claim of ongoing, disabling symptoms since the alleged onset date.

[Filing No. 13-2 at 29.]

While the ALJ took on a significant presentation of Walter K.'s prior medical history and noted throughout this recitation Walter K.'s lack of treatment or discontinuing taking medication, lack of phone access, psychiatric issues, and side effects of other medications, she did not attempt to ascertain why Walter K. failed to seek more consistent treatments or any limiting factors for noncompliance in the RFC analysis or at the administrative proceeding. The ALJ's failure to do so in this case is an error that should be addressed on remand. See *Beardsley*, 758 F.3d at 937.

### B. Dr. Niezer's Statements

Next, Walter K. argues that the ALJ failed to analyze Dr. Niezer's report in its entirety as a medical opinion and incorporate various additional limitations into the RFC. [Filing No. 16 at 14.] Walter K. argues that Dr. Niezer lists three limitations that were not analyzed in the ALJ's RFC discussion, namely:

(1) Even through course of interview pt alternating between angry/irritable and pleasant/calm. Given this pattern suspect anger/irritability sx's more likely secondary to anxiety / chronic pain and/or cluster B personality pathology, presents with some narcissistic/antisocial traits ….

(2) Ok to continue Seroquel for now as pt feels it is helping for sleep, perhaps not best long-term option in light of comorbid DM.

(3) Also review with patient that Pt was non-specific impulse control disorder (anger mgmt..). explained limits of medication mgmt. of this condition, etc. Reinforce counseling is most likely to be of value. Pt open to referral.

[Filing No. 16 at 14; Filing No. 13-7 at 373-374.]

The Commissioner contends that the portions of Dr. Niezer's report in question are not medical opinions under the regulations, but rather clinical observations and diagnoses known as

"other medical evidence." [Filing No. 17 at 10.] The Commissioner argues that because Dr. Niezer's statements did not comment on what Walter K. could still do despite his impairments or the effect of such impairments on his ability to perform he mental demands of work activities, these statements were not "medical opinions" deserving analysis. [Filing No. 17 at 11.]

The ALJ is required to evaluate every medical opinion he or she receives. 20 C.F.R. § 416.927(c). For claims filed by an adult on or after March 27, 2017, the regulation's definition of medical opinion is changed to:

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: [...]
>
> (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2).[5] Because Walter K. filed his claim in May 2018, any medical opinion must confirm to the above definition.

---

[5] The former "treating source rule" required a treater's medical opinion to be given controlling weight in some circumstances. The old treating source rule was replaced by the new regulation found in 20 C.F.R. § 404.1520c, which specifies that an ALJ is not required to give special weight to the opinions of a disability applicant's treating physician. *See* 20 C.F.R. § 404.1520c. Instead, all medical opinions are to be evaluated on an equal basis for "persuasiveness" through a checklist of factors that 20 C.F.R. § 404.1520c enumerates.

Upon review of Dr. Niezer's October 2019 report, this Court finds that Dr. Niezer's diagnostic impression statements do not contain a medical opinion requiring consideration by the ALJ for two reasons. First, Dr. Niezer was not evaluating Walter K. to determine his work-related functional impairments. Rather, the purpose of Dr. Niezer's report was to conduct a follow up for Walter K.'s major depressive disorder and anxiety with his associated anger/irritability and chronic pain. [Filing No. 13-7 at 372.] Dr. Niezer reviewed Walter K.'s symptoms, problems and mental status, and provided a diagnostic impression, an initial treatment plan, any medication changes, and overall visit diagnoses. [*See* Filing No. 13-7.] Given the purposes of the report, Dr. Niezer's October 2019 statements should not be interpreted as relating to limitations in a work setting.

Second, Dr. Niezer's statements did not expressly relate to Walter K.'s ability to perform mental demands *in a work setting.* The absence of any language in Dr. Niezer's report that the diagnostic impressions relate to Walter K.'s ability to concentrate, respond appropriately carry out instructions, or relates to an impairment, further supports the conclusion that the statements were not "medical opinions". Dr. Niezer's statements are in line with the definition of "other medical evidence," which includes judgments about the nature and severity of a claimant's impairments, a claimant's medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis. *See* 20 C.F.R. § 404.1513(a)(3). Having concluded that Dr. Niezer did not provide a medical opinion, the court similarly concludes that the ALJ was under no obligation to evaluate these statements in the written decision.

C. **Qualitative Interactive Limitations**

Lastly, Walter K. argues the ALJ failed to include qualitative interactive limitations in the RFC analysis. [Filing No. 16 at 18.] Walter K. contends that the ALJ included a quantitative

limitation of the interactions between himself, co-workers, and supervisors, but this limitation lacked any qualitative parameters. [Filing No. 16 at 18.]

The Commissioner argues the ALJ's RFC was supported by substantial evidence, citing to Dr. S. Hill, Ph.D., and Dr. J. Gange, Ph.D., state agency psychologists. [Filing No. 17 at 14-15.] The Commissioner argues further that the ALJ concluded Walter K. should have social interaction limitations greater than those outlined by the state agency psychologists, namely quantitative limitations dealing with the public. [Filing No. 17 at 15.]

When conducting the RFC analysis, "an ALJ must include all of a claimant's limitations supported by the medical record." *Deborah M. v. Saul*, 994 F.3d 785, 791 (7th Cir. 2021) (citing *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014)). Crucially, however, an ALJ need only include limitations that are supported by the medical record. *See, e.g.*, *Deborah M.*, 994 F.3d at 791 (concluding the ALJ properly omitted manipulative limitation from RFC because "[n]o doctor who addressed Plaintiff's carpal tunnel syndrome ever deemed it a manipulative limitation"). While an ALJ is not required to adopt the state agency psychologists' opinions in their entirety, they are required to build a "logical bridge from the evidence to [their] conclusion." *Steele v. Barnhart*, 290 F. 3d 936, 9441 (7th Cir. 2012).

The ALJ ultimately found that Walter K. "can tolerate only occasional contact with co-workers, supervisors and the general public." [Filing No. 13-2 at 20.] Additionally, the ALJ noted the state agency consultants "did not have the benefit of reviewing the full medical record or assessing the statements of the claimant's substitute party at hearing", so the ALJ assigned an additional quantitative social limitation with respect to co-workers and supervisors. [Filing No. 13-2 at 31.]

This Court finds it curious that the Commissioner references Dr. Hill and Dr. Gange's assessments which note that Walter K. could "relate on a *superficial* basis with coworkers and supervisors", when "superficial" is a qualitative term that was not utilized in the ALJ's RFC or hypotheticals to the Vocational Expert. [Filing No. 17 at 14; Filing No. 13-3 at 14, 45.] While the ALJ ultimately assigned a social interaction limitation to Walter K. not referenced by state agency psychologists (i.e., "occasional contact", a qualitative limitation), there is medical evidence in the administrative record that state agency consultants believed Walter K. should receive a "superficial" interaction limitation in his RFC assessment. There is no explanation as to why the ALJ provided an additional limitation of "occasional interactions" but not the "superficial interactions" from the psychologists' opinions. Therefore, the ALJ has failed to present a logical bridge connecting her discussion of the evidence to the limitations included in the RFC, warranting remand. See *Beardsley*, 758 F.3d at 937.

## IV.
### CONCLUSION

For the reasons detailed above, the Court **REVERSES** the ALJ's decision denying Walter K. benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence 4) as detailed above. Final judgment will issue by separate entry.

Date: 3/24/2022

Mario Garcia
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF to all counsel of record.**